No. 2893

Second Circuit
(Second Division)

WALLENBURG v. KERRY

(April 9, 1931. Opinion and Decree.)

Phanor Breazeale, of Natchitoches, attorney for plaintiff, appellant.

M. L. Dismukes, of Natchitoches, and Peterman, Dear & Peterman, of Alexandria, attorneys for defendant, appellee.

TALIAFERRO, J. Plaintiff conducts a small mercantile business in the village of Cloutierville, in Natchitoches parish, and in regular course of trade extended

credit to one Paul M. Seick, then engaged in the operation of a sawmill near the village, on open account to the amount of $67.90, for groceries. In addition to this account, plaintiff cashed or took up two checks of said Seick on the Bank of Cloutierville, of which defendant is cashier, for $7.60 and $28.75, respectively, which had been issued to laborers at said sawmill in payment of wages due them for services thereat. These checks were dishonored when presented for payment at said bank, for the reason that Seick's account was insufficient to take care of them.

It is alleged in plaintiff's petition that, after the checks had been dishonored, she decided to institute suit thereon and on the account against Seick, and seize the lumber in the mill yard, some four cars, when, after some discussion between them, defendant agreed with her unconditionally that, if she would not invoke the contemplated court proceedings, he would pay the amount due her by Seick; that defendant stated to her that Seick was due him several hundred dollars, and, if a seizure of the lumber was made, the labor claims would come in and disastrous results would follow, or words to this effect; that, relying upon the assurances and promises of defendant, she did forego her intention to sue and seize the lumber; that thereafter said lumber was shipped and sold, and defendant so manipulated matters as to collect what Seick was due him, and then repudiated his obligations with plaintiff, stating to her that "he had got his money and did not propose to carry out his obligation and contract and she could get her money the best she could."

Plaintiff further alleges that Seick was insolvent to the knowledge of defendant on July 10, 1925, and had left the parish and his whereabouts unknown. This suit was filed on October 8, 1926.

In paragraph 8 of the petition it is alleged:

"That on account of petitioner's inexperience, she was taken advantage of by Kerry in this matter; that when Kerry refused to comply with his obligation and pay her debt of $104.25, that he had contracted and obligated himself to pay * * * your petitioner consulted attorneys in Natchitoches who brought suit in the district court for your petitioner against Seick * * * in the endeavor to exhaust all remedies against Seick and to reduce the debt as much as possible, that Kerry was liable for, and seized certain lumber, but same had to be released as it was claimed by other persons; that such suit was filed in good faith but under an error and misconception of fact and law and of her real rights against Kerry, the same cannot be pleaded as an estoppel against your petitioner."

Defendant denied all the allegations of plaintiff's petition touching the agreement by him to pay her the amount due by Seick, specially denying that he asked her not to bring the suit she contemplated, and that to the effect that he "got control of the lumber and at once had it shipped out to his account and manipulated the matter so a to pay himself," etc.

He further alleged that plaintiff has been settled with by her acceptance of certain lumber belonging to Seick; that having brought the suit against Seick, as alleged in paragraph 8 of her petition, she is estopped and debarred from maintaining the present suit.

Defendant reconvened, and asked for judgment against plaintiff on the grounds that some of the allegations of her petition were "libelous and defamatory."

The district judge ruled out practically all the evidence offered in support of de-

fendant's reconventional demand, and rejected the demand in full in judgment on the merits of the case. Defendant did not appeal. He asks no amendment of the judgment, but, on the contrary, in brief, prays that it be affirmed.

When plaintiff undertook to prove the allegations of her petition to the effect that defendant agreed to pay the debt due her by Seick, she was met by objection that parol testimony is not admissible to prove an agreement to pay the debt of a third person, under article 2278 of the Civil Code. The objection was sustained by the district judge, but he reconsidered the ruling and admitted the testimony subject to the objection so that this court would have the evidence before it, in the event of appeal.

If the objection to this line of evidence is good, that will end this suit. If not good, then plaintiff is entitled to judgment.

The testimony of plaintiff, corroborated by that of her brother, when weighed in the light of the circumstances existing at the time it is claimed defendant agreed to pay this debt of Seick, if plaintiff would not create complications by seizing the lumber, convinces us that her allegations on this score are true, and that defendant's agreement was unconditional. We are further convinced that after this agreement was made, the lumber of Seick was sold and shipped away; that Seick brought to defendant the check or checks representing the price of the sale and he collected the amount due him by Seick, some $800, and, if there was any balance from the proceeds, it was turned over to Seick or to other creditors, but none of it went to plaintiff.

Defendant (p. 23 of Tr.) on this point testified as follows:

"Q. Now you collected it; state the specific acts and how it was collected?

"A. Well, when the lumber was shipped out the checks would be issued to Mr. Seick and he brought the checks to me.

"Q. Brought the checks to you?

"A. Yes."

Within a short time after these events, the sawmill of Seick's collapsed financially and he departed from the community, leaving little or no assets behind for his creditors.

If the contractual relation between plaintiff and defendant, arising out of their agreement about the Seick indebtedness, is such as not to fall within some exception to the literal interpretation of article 2278 of the Civil Code, then it is obvious plaintiff cannot succeed in this suit. For the court to afford relief to her against defendant, it will be necessary to find and hold that the agreement between them, and the promises of the defendant, were of such nature, hedged in by such circumstances and influenced by such interest and considerations, pecuniary or otherwise, as to cause it to fall within an exception to this article of the Code.

This article and others of similar nature correspond to what is known as statute of frauds of the common-law states. Such are enacted as a matter of public policy, and their usefulness is too well known to require comment.

The weight of authority interpreting statutes of this kind is to this effect: That, if the agreement to pay the obligation of a third person is merely a collateral undertaking, it comes within the statute of frauds; but, if such agreement is independent, not made primarily to answer for another, but is impelled from pecuniary or business motives, accruing to the promisor, then it does not fall within the statute,

and parol testimony is admissible to establish same.

Plaintiff held evidences of debt against Seick, part of which, at least, was of a privilege nature, being issued to a laborer who subrogated plaintiff to his rights. The checks had been dishonored by the bank of which defendant was cashier. Plaintiff, having a small business and doubtless limited capital, naturally became alarmed at the prospect of losing what Seick owed her. The record convinces us that her fears were well founded. It was evidently generally known in the small community about Cloutierville that defendant in some way and to some extent was financing Seick's sawmill. Defendant admits that he did contribute to the financing of the mill. There was due him several hundred dollars for advances to Seick, when the agreement was made with plaintiff which likely was unsecured by privilege on the manufactured products of this mill. Learning of plaintiff's determination to seize the lumber for her debt against Seick, whether by sequestration or attachment or both, does not appear, defendant became disturbed, as such a course might imperil his chances to collect in full the amount due him. He had a pecuniary interest to further in seeing that the status of affairs was not molested until the lumber could be sold and the proceeds safely beyond the reach of creditors, save himself. Being thus situated, he had a very material purpose to serve when he induced plaintiff not to seize this lumber. It meant, possibly, considerable money to him to forestall her plans to protect herself. This formed a serious consideration to his undertaking with plaintiff. The measure of his liability on this account being the amount plaintiff was fixing to sue for, and which he agreed to pay to her. The obligation on his part then became primary and not collateral, or one of suretyship.

Under these circumstances, can the defendant escape the fulfillment of his obligation by hiding behind the prohibition contained in article 2278 of the Code? We think not.

The statute of frauds of Nebraska reads as follows:

"In the following cases every agreement shall be void, unless such agreement, or some note or memorandum thereof, be in writing, and subscribed by the party to be charged therewith: * * *

"Second. Every special promise to answer for the debt, default or misdoings of another person." Compiled Statutes of Nebraska 1929, sec. 36-202.

In effect, this law is about the same as our article 2278, par. 3, Civil Code.

The United States Supreme Court, in case of Davis v. Patrick, 141 U. S. 489, 12 S. Ct. 58, 59, 35 L. Ed. 826, construing the Nebraska statute in syllabus, says:

"Whenever the main purpose and object of the promisor is not to answer for another, but to subserve some pecuniary or business purpose of his own, * * * his promise is not within the statute, although it may be in form a promise to pay the debt of another."

The court, in passing, referred to Emerson v. Slater, 22 How. 28, 16 L. Ed. 360, on the same subject, and further notes:

"To this may be added the observation of Browne in his work on the Statute of Frauds, sec. 165:

" 'The statute contemplates the mere promise of one man to be responsible for another, and cannot be interposed as a cover and shield against the actual obligations of the defendant himself.' "

Elliott on Contracts, Cumulative Supplement, sec. 1240, p. 292, says:

"Relinquishment of Lien:

"Many recent cases announce and apply the doctrine of this section to the effect that a promise to a lienholder by one having an interest in property for his own benefit or protection to pay off the lien thereon in consideration of its relinquishment, or forbearance to enforce it, is an original promise not within the statute of frauds."

Numerous cases are cited under this section.

The author in 15 L. R. A. (N. S.) page 224, makes this comment:

"In ascertaining the intention of the promisor in undertaking to pay the debt of another, it has usually been held that if the promisor represented that he was owing the buyer, or had money in his hands belonging to him, and that out of such moneys he would pay the seller, or used other words to like effect, such promise was an original obligation, and not within the statute of frauds."

Tending to support the principle enunciated in the above-quoted authorities, we cite Fabacher v. Crampes, 166 La. 397, 117 So. 439; Baskin v. Abell, 14 La. App. 601, 122 So. 133.

In the Fabacher case, the court refers to Davis v. Patrick, approvingly.

Applying the principle laid down in the above-quoted authorities, we have reached the conclusion that parol testimony was competent to prove the agreement of defendant to pay the debt plaintiff held against Seick; that defendant was actuated by pecuniary interest of his own in making the agreement, which became an independent undertaking on his part and enforceable against him.

The contention of defendant that plaintiff had accepted lumber in satisfaction of the amount due her by Seick is not sustained by the evidence, nor is the plea of estoppel good against her for having, under the circumstances, endeavored to collect the amount by suit before calling on defendant for payment thereof.

For the reasons herein given, the judgment appealed from is annulled, avoided, and reversed, and it is now ordered, adjudged, and decreed that plaintiff, Miss Gussie Wallenburg, do have and recover judgment against defendant, C. F. Kerry, in the sum of $104.25 with 5 per cent per annum interest thereon from July 10, 1925, until paid, and costs of suit, including those of appeal.