## FRANKLINTON CANNING CO., Inc., v. BLAIZE & JOHNSON et al.

### No. 2023.

Court of Appeal of Louisiana. First Circuit.

Oct. 4, 1939.

Talley & Richardson, of Bogalusa, for appellant.

Ott & Johnson, of Franklinton, for appellee.

DORE, Judge.

This is a suit by the Franklinton Canning Company, Inc., of Franklinton, Washington Parish, Louisiana, through its Receiver, Paul E. Greenlaw, alleging that the partnership of Blaize and Johnson on March 21, 1938, made a written offer to lease its canning plant at Franklinton for the season of 1938 for a rental of $300 payable $100 cash, $100 when packing began, and $100 ten days after packing began, plus an additional charge of 5 cents per case of all merchandise packed at said plant; that the said offer was accepted by the Receiver on March 26, 1938, after petitioning for and receiving an order of court authorizing the acceptance thereof; that one Mike (Marko) Skrmetta, to the best of petitioner's information and belief, thereafter purchased the interest of Blaize and assumed his liabilities in the lease and operated the canning plant thereunder during the entire canning season; that none of the rental, including the three $100 payments plus the 5-cent charge on 18,000 cases of beans packed, has been paid; and that the defendants, Blaize and Johnson and Skrmetta are therefore justly indebted in solido unto plaintiff in the sum of $1,200. The petition avers further that plaintiff is entitled to recognition of its lessor's lien and privilege on certain machinery of the defendant Skrmetta provisionally seized in the plant.

The defendants made an appearance through their attorney and filed answer. It is apparent that the answer was prepared and filed principally for Skrmetta, and the names of Blaize and Johnson were inserted later, evidently by consent. This answer sets forth that Skrmetta was invited to come to Franklinton to investigate the advisability of taking over plaintiff's canning plant which was in serious financial difficulties and to operate it; that upon arriving at Franklinton he conferred with Greenlaw, the Receiver, and made an agreement with him whereby he was to pay $300 for the season's rent; that it was agreed that since Blaize had already paid $100 on the rent, Skrmetta was to refund that sum to Blaize and pay an additional $200 for the season's rent; that Skrmetta at no time bought or agreed to buy anything from Blaize and Johnson and at no time assumed or agreed to assume any of their obligations. The answer avers further that additional equipment was moved into the plant by Skrmetta with the understanding that he would be permitted to remove it upon payment of all the rent due by him; that he has heretofore paid $100 on the rent by refunding that sum to Blaize in accordance with the agreement, and tenders the remaining $200 due, together with court costs to the date of tender; that this is

all he owes for rent and that he is in no way liable for any former contract between the Receiver and the other defendants. He prays that plaintiff be required to accept his tender and that the suit be dismissed and his property released.

The lower court, upon hearing of the case, found that a contract had been entered into, for the lease of the canning plant, between the Receiver of the Franklinton Canning Company and the partnership of Blaize and Johnson, under the terms of which the partnership was to pay a total rental of $300 plus an additional charge of 5 cents per case of all merchandise packed; that the defendant Skrmetta replaced Blaize in the said contract of lease; that Skrmetta and Johnson thereafter operated the plant under the terms of the contract and packed 17,000 cases of beans; that the $300 rental was paid, but that there was still owing the sum of $850 representing the charge of 5 cents per case of beans packed, for which sum he rendered judgment in favor of the plaintiff and against the defendants, Skrmetta and Johnson, in solido, the said judgment recognizing the lessor's lien and privilege of plaintiff on all machinery and equipment in the plant. The defendant, Skrmetta, has appealed. Plaintiff has answered the appeal asking that the judgment be increased to the sum of $877.10 on the ground that the evidence shows that 17,542 cases of beans were packed instead of 17,000 cases as found by the trial judge. The defendant, Johnson, has not appealed and is therefore not a party before this court.

The principal question involved in this case, and the one on which we can dispose of this appeal, is whether or not it is established by the evidence that Skrmetta purchased the interest of Blaize and assumed his obligations under the contract of lease between plaintiff and Blaize and Johnson.

■ The evidence clearly shows that Blaize and Johnson made a definite offer in writing to Greenlaw, the Receiver, to lease the plant for the season of 1938, and that Greenlaw accepted this offer after securing an order of court authorizing him to do so. We agree with the trial judge that this constituted a valid contract between the plaintiff and Blaize and Johnson, and that it was unnecessary for any further agreement to be executed as contended by counsel for defendant, Skrmetta.

■ The agreement, as shown by the written offer, provides that the lessees were to pay $100 cash, $100 when packing began, $100 ten days after packing began, and 5 cents per case for all beans packed, the charge of 5 cents per case to be payable in weekly settlements and to be applied to the purchase price in the event that the lessees should purchase the plant before July 1, 1938.

It is shown by the testimony that Blaize made the initial payment of $100 in accordance with the terms of this agreement, and that thereafter Johnson, seeing that they were financially unable to carry out their agreement sought out the defendant, Skrmetta, and urged him to come to Franklinton with a view of taking over the plant. Skrmetta's testimony is to the effect that he subsequently interviewed Greenlaw, whom he understood to be in charge of the plant, and made an agreement with Greenlaw under the terms of which he was to have full charge of the plant for the packing season, in consideration of refunding the payment of $100 to Blaize and paying an additional sum of $200, and with the further understanding that the amount of rent paid would be applied to the purchase price if an agreement could be reached for the sale of the plant to him. He states that under the terms of his agreement he was given the privilege of bringing in new machinery and equipment with the understanding that he could remove the machinery and equipment upon payment of his rent in full. He states further that he never knew of any definite agreement between Greenlaw and Blaize and Johnson, although he knew that the latter had possession of the plant when he came to Franklinton, and that his agreement with Greenlaw was separate and distinct from any prior agreement between the Receiver and Johnson and Blaize and contained no provision for a charge of 5 cents per case for beans packed. His testimony is fully corroborated by the other two defendants and by his son, Nick Skrmetta.

Greenlaw testifies that Johnson brought Skrmetta to his office for an interview, and that both Johnson and Skrmetta stated to him that if Blaize could be gotten out, Skrmetta would come and take his place, and, in effect, that his agreement was that Skrmetta was to refund to Blaize the $100 paid by the latter and thereupon to take Blaize's place under the terms of the original agreement. Mr. Greenlaw admits

that he did not discuss the terms of the lease with Skrmetta, contending that he did not think it necessary, since he pre-sumed that Skrmetta had been fully in-formed of the terms thereof by Johnson and Blaize. Johnson and Blaize both tes-tify that neither of them ever discussed the terms of their lease with Skrmetta. Mr. Greenlaw frankly admits that towards the end of the packing season when Skrmetta offered to pay the balance of the rent and to check out of the plant, where-upon he informed Skrmetta that he owed an additional charge of 5 cents per case for the beans packed, Skrmetta appeared to be very much surprised, and that for the first time he, Greenlaw, realized that prob-ably Skrmetta did not know what was in the contract.

The testimony of Mr. Greenlaw gives us the impression that he did not wilfully withhold from Skrmetta the facts and cir-cumstances surrounding his entry into the proposition of operating the canning plant, but frankly we do not believe that his tes-timony supports the contention raised in the suit to the effect that Skrmetta assumed the obligations of Blaize under the original agreement. We do not believe that he in-tentionally failed to disclose everything that the agreement contained to Skrmetta, but it cannot possibly be said from his testimony that he ever showed the written offer of Blaize and Johnson, which contain-ed the terms of the agreement, to Skrmetta, and taking his testimony as a whole he leaves the impression that Skrmetta knew nothing at the time about the charge of 5 cents per case. It seems to us that the most reasonable and natural procedure, if by the agreement Skrmetta was to be sub-stituted in Blaize's place, would have been for Mr. Greenlaw to have produced this written offer embodying the terms of the agreement, which he had in his possession, and to have shown it to Skrmetta; or, better still, to have had Skrmetta assume Blaize's obligations thereunder in writing. The district judge expresses the opinion that a man of Skrmetta's business attain-ments must have informed himself fully of the terms and conditions under which he was entering the business. We do not see wherein the testimony reflects any special business ability as existing in Skrmetta, but the positive way in which he testifies as to his understanding and that he never was told by Greenlaw what the provisions of the original agreement were,

which in effect is admitted by Greenlaw himself, impresses us. From the evidence and from Mr. Greenlaw's manner of tes-tifying and the fact that he was the duly appointed receiver for the plaintiff com-pany, we would rather think that Mr. Greenlaw was the man of far more busi-ness acumen and that he is the one who would have been eager to fully acquaint Skrmetta with the provisions of the Blaize and Johnson agreement, if Skrmetta was to operate under the terms thereof. When he concedes that for the first time he realized that Skrmetta did not know anything about the charge of 5 cents per case, it was at the end of the packing season, we cannot help but feel that he upholds in a great measure the testimony of Skrmetta and his wit-nesses. And that belief is further strength-ened by the fact that, while the original agreement provided that a payment of $100 was to be made on the day packing began and another similar payment ten days thereafter and the charge of 5 cents per case was to be paid in "weekly settlements", there is no testimony whatsoever that any demand therefor was ever made until Skrmetta attempted to check out at the end of the packing season.

The fact that Skrmetta paid $100 of the amount due by him for rent to Blaize is not of itself convincing proof that he was buying Blaize's interest in the contract of lease. That payment was made to Blaize in the presence of Greenlaw with the un-derstanding that it was to be applied to the $300 which was to be paid by Skrmetta either as rental or on the purchase price in case he bought the plant. It surely is not convincing proof of anything regarding the real issue in the case, which is whether Skrmetta owes the charge of 5 cents per case of beans packed during the 1938 sea-son.

From the evidence, it is very doubtful that Skrmetta ever even considered being a partner with Johnson in the operation of the plant. He maintains in his testimony that he wanted no partners. Johnson corroborates that testimony, and it appears that his only interest in the proposition was to secure the release of himself and Blaize, to secure the return of the $100 paid by Blaize and a job for himself. It does not seem reasonable that Skrmetta would have gone to the trouble and expense of putting additional machinery and equipment in the plant, as he did, for the benefit of a part-nership with a man who, under the evi-

dence, had no financial standing or backing whatsoever.

We are reluctant to set aside the findings of fact made by the trial judge, but under our appreciation of the testimony in this case, as set forth hereinabove, we are of the opinion that the plaintiff has failed to sustain the burden of proving its allegation to the effect that the defendant, Skrmetta, had been substituted in place of Blaize under the original agreement, and that he therefore owes the charge of 5 cents per case of beans packed, as claimed in this suit.

It is therefore ordered that the judgment of the lower court be and it is hereby reversed, as to defendant, Skrmetta, and plaintiff's suit dismissed as to that defendant with costs from the date of tender of the $200 rental payment, and it is further ordered that all property of defendant, Skrmetta, provisionally seized and recognized by the lower court as being subject to plaintiff's lessor's lien and privilege, be released.

OTT, Judge (dissenting).

I am forced to disagree with the majority opinion on its reversal of the finding of facts by the trial court, as well as what appears to me to be an incorrect application of certain legal principles involved in the case.

The majority opinion concedes the existence of a valid and binding contract of lease of the canning plant for the 1938 season between the receiver and Blaize and Johnson by which contract the said Blaize and Johnson unconditionally bound themselves to pay the plaintiff the sum of $300 plus 5 cents per case on all beans packed as rental for the plant. In order for Blaize and Johnson to be relieved of any of their obligations, and in order for the property of these lessees or the property of any third person in the leased premises to be released from the rental obligation assumed in that lease, the burden rests on Blaize and Johnson, or any third person seeking to have his property released from the lessor's privilege, to show that the lease was so modified or changed as to eliminate part of the rental charge. This principle of law is too well established to require the citation of authority, yet, as I read the majority opinion, it appears to me that this rule has been reversed, and a conclusion has been reached which, in

effect, holds that the plaintiff has failed to prove that the original lease was not modified and the 5 cent per case part of the rent was not eliminated, instead of placing the burden of showing this modification on the defendants. The effect of releasing Skrmetta from personal liability also has the effect of releasing the property and effects which he placed in the premises from the lessor's privilege which plaintiff otherwise would have had on this property to secure the payment of that part of the rent based on 5 cents per crate.

The majority opinion further concedes that the evidence shows that Johnson and Blaize, the ones who were bound for the rent, brought Skrmetta into the picture for the purpose of letting Blaize out. It was not the plaintiff that initiated the move to change the terms of the lease. Johnson brought Skrmetta to the receiver to discuss a plan whereby Blaize who had paid one hundred dollars on the rent might get his money back and retire from the contract. It is stated in the majority opinion that the receiver testified that Johnson brought Skrmetta to his office and that both Johnson and Skrmetta stated to the receiver that if Blaize could be gotten out, Skrmetta would take his place on refunding to Blaize the amount the latter had paid on the rent. It was on this testimony of Greenlaw, the receiver, that the trial judge based his finding of fact wherein he held that the amount of rent to be paid had not been changed by any agreement on the part of the receiver. If the testimony of Greenlaw on this point is accepted there is nothing to show that he at any time agreed to eliminate the 5 cents per case as part of the rent, and the result of the decree entered on the appeal is to hold that the receiver did either expressly or impliedly agree to eliminate this part of the agreement.

I am unwilling to subscribe to an opinion which holds that the trial judge was in error in believing the testimony of Greenlaw instead of that of Skrmetta and his witnesses, one of whom was Johnson. The reasons given in the majority opinion for holding that the trial judge was in error in believing the testimony of Greenlaw in preference to that of Skrmetta and his witnesses are the following:

(1) Because Greenlaw did not tell Skrmetta all the terms of the lease with Blaize and Johnson and particularly the

5 cents per case as part of the rent. It is conceded that Greenlaw did not purposely withhold any information from Skrmetta. Then why was Greenlaw obliged to give Skrmetta all the details of the lease? It was Johnson and Skrmetta who came to Greenlaw to discuss and secure changes in the lease, not the making of a new lease. It was certainly as much the duty of Skrmetta to ask for and obtain all the terms of a lease under which he was to assume certain obligations as it was the duty of Greenlaw to give him the details of the lease. As Johnson brought Skrmetta to Greenlaw to substitute Skrmetta for Blaize, Greenlaw certainly had a right to assume that Skrmetta knew the terms of the lease with Blaize and Johnson. It is indicated in the majority opinion that it was the duty of Greenlaw not only to show the written contract to Skrmetta but to have secured his assent in writing to the terms of the lease. I am unable to see why such a great obligation was placed on Greenlaw and practically none at all on Skrmetta. Greenlaw was not seeking a new lessee; he already had lessees who were bound under terms which they themselves proposed and which the court approved.

(2) It is stated that Greenlaw is a much more experienced business man with greater business acumen than Skrmetta and for that reason he was under a greater duty to inform the latter of the terms of the Blaize and Johnson lease. But the trial judge who had a peculiar opportunity to ascertain the ability and business acumen of Skrmetta did not think he was in need of special protection on account of ignorance and inexperience, but, on the contrary, thought that Skrmetta was well able to take care of himself. My reading of the testimony does not lead me to believe that the trial judge was in error in his evaluation of Skrmetta's ability and business acumen.

(3) As a circumstance strengthening the contention of Skrmetta that the 5 cents per case was eliminated in the agreement had by him with the receiver, it is said that the receiver made no demand on Skrmetta for this 5 cents per case until the close of the season. This is true, but it is also true that the receiver made no demand on Skrmetta for the balance of $200 which, under the original lease, was to be paid before the end of the packing season.

In an effort to support the contention of Skrmetta that he was not to pay 5 cents per case as part of the rent, Johnson testified that any person who would agree to pay $300 and 5 cents per case for the rent of this plant would be out of his mind, yet, Johnson stultified himself in so testifying as he is the very person whose name is signed to the letter of Blaize and Johnson to the receiver proposing to pay these identical amounts for the rent of this plant.

Mr. Greenlaw, the Receiver, testified that after the contract of lease was entered into with Blaize & Johnson and after they had paid the $100 provided for in the lease, Johnson brought Skrmetta to his office and these two stated to him that if they could get Blaize out Skrmetta would come in and take his place; that Skrmetta did not inquire as to the terms of the contract with Blaize & Johnson, and that he (Greenlaw) did not tell him the terms nor say anything about the 5 cents per crate as part of the rent; that he (Greenlaw) did not know that Skrmetta was not familiar with this part of the contract until just before the end of the packing season; that he (Greenlaw) thought that Skrmetta was familiar with the contract of lease as he was trying to get Blaize out of it; that nothing was said at the time about Skrmetta paying Blaize back the one hundred dollars that he paid. Greenlaw testified positively that he had no agreement with Skrmetta that the latter was to pay Blaize $100 to refund the amount paid by him and that Skrmetta was to pay the other $200 and take over the plant. The receiver further stated positively that he entered into but one contract for the lease of the plant, and that was with Blaize & Johnson under the order of court.

In my opinion, the testimony of Greenlaw is corroborated by the following facts and circumstances:

(1) Blaize and Johnson sought out Skrmetta and brought him to Greenlaw with the apparent purpose of making it possible for Blaize to get out and get his money back. If Blaize and Johnson did not inform Skrmetta of all the terms of the lease, that was no fault of Greenlaw's as the latter understood that Skrmetta was taking the place of Blaize.

(2) Skrmetta actually paid Blaize $100 to re-imburse him, and thereafter Blaize

retired from the business and it was carried on by Johnson and Skrmetta.

(3) Before Skrmetta came into the picture the receiver and Blaize & Johnson had a verbal understanding that a man named James was to keep an account of the number of crates packed by the plant so that the rent could be determined, and this agreement was carried out after Blaize got out and Skrmetta came in. If this part of the lease had been abrogated in the new agreement as claimed by Skrmetta, there would have been no occasion whatever for a man to keep account of the crates for the receiver.

(4) At no time did the receiver get an order of court to make a different lease with another person and on entirely different terms.

Under the finding of fact made by the trial judge, I think the acts of Skrmetta in paying off Blaize and continuing the business with Johnson under the terms of the lease, particularly with reference to keeping an account of the crates packed, are sufficient to bind Skrmetta under an implied agreement on his part to assume the obligations of the lease. C. C. arts. 1816 and 1817; Meriwether v. Dorrity et al., 158 La. 405, 104 So. 187. The assumption by Skrmetta of the obligation of the lease does not arise from an agreement on his part to pay the debt of a third person, but his obligation was a primary one arising from his undertaking to carry out a lease made for the mutual benefit of the lessor and the lessees and in which Skrmetta, for his own pecuniary benefit, took over the rights, as well as assuming the obligations of the lease. Wallenburg v. Kerry, 16 La.App. 221, 133 So. 823.

If Skrmetta was substituted as the sole lessee of the plant for a rental of $300 only as claimed by him, it is obvious that the original lease with Blaize and Johnson was abrogated and there is no liability on the part of Blaize and Johnson whatever, yet by reason of the failure of the latter to appeal from the judgment against them, we have the anomalous and inconsistent situation wherein plaintiff has a judgment against its original lessees under a contract that was not merely changed as to the amount of the rent, but which was entirely abrogated and another one substituted in its place.

I respectfully dissent.