93 So.2d 266 (1957)
Wheeler FUSELIER
v.
Sam HUDSON.
No. 4346.
Court of Appeal of Louisiana, First Circuit.
February 4, 1957.
Rehearing Denied March 25, 1957.
C. W. Berry, Jr., Oakdale, for appellant.
Alva Jones, Oakdale, for appellee.
LOTTINGER, Judge.
The trial judge rendered written reasons for judgment in this matter which we herewith set out in full:

*267 "This is a suit by Wheeler Fuselier against Sam Hudson for $400.00, the par value of 16 shares of preferred nonvoting stock in the Oakdale co-operative Dairies, Inc. of Oakdale, Louisiana. The defendant purchased the assets of the corporation by deed dated January 22, 1952 and recorded May 20, 1952, which deed was executed by a liquidator of the corporation. The deed which is in evidence as Exhibit P-3 states that the sale was made and accepted in consideration of $14,850.00 the balance due on two mortgages which were assumed by Sam Hudson.
"Practically all the testimony was introduced for the apparent purpose of showing that the defendant had agreed to pay the preferred shareholders as a part of the consideration for the assets of the corporation. Defendant objected to the introduction of any evidence to alter the terms of the contract of sale above referred to and all of the testimony was introduced over his objection. This constitutes one of the defendant's primary defenses, his argument being that the deed was given by a liquidator of the corporation; that there is no allegation nor was there any proof that the liquidator intended to have the preferred stockholders paid for their stock. The court concluded that the parol evidence was admissible under the rule cited by plaintiff's counsel which holds that a parol agreement which does not contradict the writing, but merely covers an additional and collateral undertaking is admissible. Dwight v. Linton, 3 Rob. 57; New Orleans & Carrollton Railroad Co. v. Darms, 39 [La.] Ann. 766, 2 So. 230; McConnell v. Harris Chevrolet Co., Inc. [La.App.], 147 So. 827; and Brandin Slate Co. v. Fornea [La. App.], 183 So. [572], 573. There is also a rule of law providing that the real and true consideration for a sale may always be shown where a consideration is expressed, even though the consideration may be different from that expressed in the deed. Morris v. Monroe Sand & Gravel Co., 166 La. [656], 659, 117 So. 763; Queensborough Land Co. v. Cazeau [x], 136 La. [724], 734, 67 So. 641; Ruston Brick Works v. Heard [La.App.], 177 So. 494; Dartez v. Meaux [La.App.], 44 So.2d 146, [147].
"Defense counsel further urged that [LSA-] Revised Civil Code Article 2278 which prohibits parol evidence for the purpose of providing any promise to pay the debt of a third person is here applicable. However, this article is inapplicable where the promisor has a material interest in making the promise, and receives consideration therefor. In such an instance the promisor binds himself to pay the debt, making his own obligation the primary obligation. Coreil v. Vidrine, 188 La. 343, 177 So. 233; Collier v. Brown, 19 La. App. 567, 141 So. 405; Wallenburg v. Kerry, 16 La.App. 221, 133 So. 823.
"At the time when the defendant was negotiating for the purchase of the corporation's assets the corporation was facing liquidation. It could not obtain enough business to pay its overhead and certainly was unable to take care of the mortgage notes on its indebtedness which totaled approximately $15,000.00. However, the corporation had valuable assets as is revealed by the testimony of its president that it had received an offer of $25,000.00 from a large dairy concern in another city.
"Under these circumstances on November 10, 1951, the Board of Directors of the Corporation leased the plant and facilities to the defendant with the plan that a sale would be consummated within six months. At 7:30 P.M. on December 10, 1951, a meeting was held in a restaurant in the City of Oakdale *268 to which all the preferred stockholders were invited.
"Mr. Hudson, the defendant, Mr. C. W. Berry, Jr., Mr. Alex L. Stevens, Mr. J. M. Johnson, Mr. Sullivan Aguillard, Mr. J. J. Brooks, Jr. and other preferred stockholders attended this December 10, 1951 meeting which was presided over by Mr. Wesley Dyer, president of the Co-op. The plaintiff, Mr. Wheeler Fuselier, did not attend, however, he talked to the defendant immediately following the meeting as defendant was leaving the restaurant.
"Mr. Sam Hudson, the defendant, testified that it is his recollection that at this meeting he offered to pay the preferred stockholders 50¢ on the dollar if they would present their certificates to him within one year from the date of the meeting. If the preferred stockholders were willing to let Mr. Hudson have the use of their money he would pay them 100% of their investment plus 2% interest after both mortgages were retired and only in the event that the business was making money. In other words, it was Mr. Hudson's position that the preferred stockholders could take 50% cash or if they elected to gamble on the success or failure of the business, they would receive 100% of their investment plus 2% interest if the business was successful and nothing if the business was a failure. Mr. Hudson's position is that the business was a failure; that the plaintiff did not submit his stock certificates for cancellation at 50¢ on the dollar on or before December 10, 1952; that, therefore, defendant is not indebted to the plaintiff.
"Mr. Alex L. Stevens testifying on behalf of the plaintiff, stated that he owned some of the corporation's preferred stock; that he had never been paid for said shares; that he made some memorandums during the meeting of December 10, 1951; that it was his impression that if the stockholders did not desire to accept 50¢ on the dollar in full payment for their certificates, that the stockholder would receive 100% of his investment plus 2% interest within two or three years after the outstanding mortgages were retired; that this amount would be due regardless of the success or failure of the business.
"Mr. Wheeler Fuselier testified that he talked to the defendant immediately following the meeting of December 10, 1951; that at that time plaintiff told defendant that he would not sell his stock at 50¢ on the dollar; that Mr. Hudson told him that he would receive an interest bearing note for the stock; that he has never offered to surrender his stock at 50¢ on the dollar.
"Mr. Wesley Dyer testifying on behalf of plaintiff, stated that he was president of the corporation and presided over the meeting of December 10, 1951; that
"`Mr. Hudson agreed to pay fifty cents on the dollar then for stockfor these certificates, or if the people that held these certificates or the bidders then or who ever it was held them held these certificates wanted to let him continue using their money, that he would give them a note and pay them two percent interest until he could pay them for their stock.
"`Q. And was the note to be the fifty percent of the stock or the face value? A. No, it was to be for the face value.'
"That he received cattle from defendant in payment for his $1100.00 worth of preferred stock; that in his opinion the cattle were worth $1100.00. When being cross-examined by counsel for defendant, Mr. Dyer testified as follow?:

*269 "`Q. Now, think back, Mr. Dyer, if you can to the night of that meeting and see if you can't recall that in the deal where the stockholders were to be paid one hundred percent that it was strictly a gamble with them, but they would go along with the dairy and if the dairy operated and made it they would be paid after the conventional mortgages were paid? A. Well, we made them the offer and they wanted to accept it and they'd made a gamble on it, it was a gamble.
"`Q. No, but wasn't that the deal? A. State the Question again?
"`Q. Wasn't it the deal that they would be paid fifty cents on the dollar if they wanted to cash out at that time? A. At that time.
"`Q. Or if they wanted to take a gamble on getting all the money, go along with the operation of the dairy, they would be paid in full at sometime after the dairy was able to retire the mortgages that were against it? A. Well, the thing that were interested in would they give a note for our stock certificates in full value.
"`Q. But wasn't that the deal? You haven't answered my question. Wasn't it the deal that the business was to go along and retire these conventional mortgages and if it did they would be paid in full? A. The man said that if they'd let him use their money he'd pay them in full.
"`Q. Wasn't it on the basis, though, if the business would make a go of it he would retire those first mortgages that had to be paid? A. No, it wasn't on that basis.
"`Q. It wasn't on that basis? A. It was on the basis of what seemed to us a guarantee.
"`Q. Well, when did he say he'd take up that stock? A. He said that he'd give notes bearing two percent.
"`Q. When were those notes? A. Renewable every year.
"`Q. When were the notes to be paid? A. As he could, or if the people wanted to continue letting him use their money he would retire them as he could.
"`Q. As he could? A. Yes, sir.
"`Q. Now, did he say "as he could or as the business could?" A. Well, he said, "I'll retire them as I can."
"`Q. Then there was a condition placed on whether he could pay those notes or not, if they would wait and get their money? A. If they would wait to get their money they could.
"`Q. But you don't recall it being conditional on the business being able to retire these conventional mortgages? A. Well, it wasn't based on the business.'
"Mr. J. M. (Jim) Johnson testified as a witness on behalf of the plaintiff that he attended a part of the stockholders meeting; that the meeting was held in his cafe; that he understood that the defendant would pay the face amount of the stock; that the defendant at one time offered him some cattle in payment for his preferred stock but when he went to get the cattle defendant told him he was too late. Since this witness was not present for the entire meeting, his testimony is considered of little value as to the issue to be decided.
"Mr. Sullivan Aguillard testified as a witness on behalf of the plaintiff and impressed this court a great deal with his sincerity. He testified that it was his recollection that a stockholder `could get the full value of his money out by trading for cattle and otherwise he could get 50¢ on the dollar cash and, thirdly, if I remember right, he could get by waitingI don't know the *270 length of timejust by waiting, he could get the value of his money plus 2% interest.'
"Mr. Aguillard received cattle in payment of his preferred stock and he was satisfied that he received full value for his stock. It might be argued that Mr. Aguillard's testimony is weakened by his recollection that the offer to take cattle in payment for stock was made at the meeting of December 10, 1951, when, in fact, this court is satisfied that there was no such offer discussed at that meeting. However, a thorough reading of this witness' testimony will show that he made every effort to fairly and truthfully present the facts to the best of his knowledge.
"Mr. J. J. Brooks, Jr. testified that he attended the meeting of December 10, 1951; that he traded in his shares of stock for 50¢ on the dollar some two or three months after the meeting; that it was his impression that any stockholder who elected to retain his stock with the hope of recovering 100% of his investment would be paid only if the money was earned.
"Mr. C. W. Berry, Jr. testified that he attended the meeting of December 10, 1951; that there was no agreement voted on by the preferred stockholders at that meeting; that there was a great deal of discussion on several different propositions, but none of the propositions were either accepted or rejected.
"Mrs. Tracy Penny, liquidator of the corporation, was not called on to testify in this case. Neither counsel saw fit to present evidence as to the details of how the corporation was liquidated. For instance, the instrument by which the stockholders agreed to dissolve the corporation was not introduced. Neither counsel has furnished this court with any citation as to the corporation law applicable to the dissolution of this type of corporation.
"It is apparent that the meeting of December 10, 1951 was the only attempt Mr. Hudson made to get an agreement from the preferred stockholders or that the preferred stockholders attempted to get an agreement from Mr. Hudson. It is also apparent to this court that from the date of the meeting of December 10, 1951, the preferred stockholders had no further interest in the administration of the affairs of the corporation, and that Mr. Hudson did not expect them to have any further interest. This court has concluded that both the preferred shareholders on the one hand and Mr. Hudson on the other came to this same conclusion for the reason that it was well understood that the preferred shareholders were selling their respective shares of preferred nonvoting stock to Mr. Hudson. Therefore there was no reason to refer to Mr. Hudson's agreement to purchase the preferred stock in the deed from the liquidator to Mr. Hudson. The agreement by which Mr. Hudson undertook to pay the preferred shareholders was an entirely separate transaction from that by which Mr. Hudson acquired the assets of the corporation. After the preferred stockholders made their agreement to sell their shares of stock to Mr. Hudson there was no reason for them to be concerned with what happened to the assets of the corporation. Mr. Hudson does not deny that he agreed to buy the stock from the shareholders, he only contends that this agreement was extinguished when the business did not succeed.
"The weight of the evidence in this case favors the plaintiff. Mr. Stevens who took notes at the meeting; Mr. Dyer who was chairman of the meeting; Mr. Aguillard who was on the *271 Board of Directors, were explicit in their testimony that defendant's obligation to pay was not conditioned on the success or failure of his business. Mr. Johnson's testimony indicates the same. As against this testimony, Mr. Brooks stated that it was his impression that defendant's obligation to pay was conditioned on the money being earned. Mr. Berry concluded that there was no agreement made at the meeting of December 10, 1951. However, the record shows that Mr. Berry was the attorney who prepared the deed transferring the corporation's assets. The fact that he did not make any attempt to have the preferred stockholders reach a further agreement with Mr. Hudson evidences his understanding that the other preferred stockholders had no further interest in the corporation. This was true because the preferred stockholders had sold their shares of preferred stock to Mr. Hudson.
"From the weight of the evidence this court has concluded that the agreement between the preferred shareholders on the one hand and Mr. Hudson on the other was identical to that stated by the defendant, Mr. Hudson, in his testimony as summarized above, with the exception that his obligation to pay was not conditioned on the success or failure of his business, i. e. that the preferred shareholders who chose not to sell their stock to defendant within one year from December 10, 1951 were entitled to $25.00 per share, together with 2% per annum interest thereon due one year after the date the mortgages were either paid or settled by foreclosure proceedings. The out-standing indebtedness secured by the mortgages was paid in full in the month of September, 1954.
"Defendant argues that if this be the holding of the court plaintiff's cause of action could not arise until after the month of September, 1955, for the reason that the debt did not mature until that date. Although the amount under this court's holding was not due until September, 1955, the suit was not premature for the reason that plaintiff was seeking to have the debt recognized, a matter which defendant resisted on the grounds that there was nothing due.
"Plaintiff is now entitled to judgment against defendant in the sum of $400.00, together with interest at the rate of 2% per annum from December 12, 1956, until paid and for all costs of court."
A reading of the record shows that the factual findings of the Court below are amply substantiated. Likewise, we find no error in his legal conclusions and the judgment appealed from is, therefore, affirmed.
Judgment affirmed.