338 So.2d 717 (1976)
John L. BURT, Sr.
v.
C. J. HEBERT, Jr., and Vernon Abrahams.
No. 10848.
Court of Appeal of Louisiana, First Circuit.
September 20, 1976.
*719 Steven Joffrion, Donaldsonville, for plaintiff-appellee.
Jude Fanguy, Houma, for defendants-appellees.
Peter T. Dazzio, Baton Rouge, for third party defendants, Robert Thibodeaux and Co., Inc. and appellants.
Before LANDRY, COVINGTON and PONDER, JJ.
LANDRY, Judge.
Plaintiff, John L. Burt, Sr. (Burt), filed suit against defendants C. J. Hebert, Jr., and Vernon Abrahams for the rental of equipment furnished said defendants (Subcontractor) for the performance of a paving contract undertaken by Sub-contractor for Robert Thibodeaux and Company, Inc., (Contractor), prime contractor for construction of the Assumption Parish Hospital, Napoleonville, Louisiana. Sub-contractor third partied Contractor contending Contractor orally agreed to pay Burt's claim in the sum of $1,625.00. The trial court, giving no oral or written reasons for judgment, rendered judgment in favor of Burt against Sub-contractor in the sum of $1,625.00 and also rendered judgment in favor of Sub-contractor against Contractor in said same amount. Contractor's third party defendant reconventional demand against third party-plaintiff Sub-contractor, in the sum of $3,000.00, for money allegedly spent in completing the project, was rejected by the trial court.
Contractor has appealed the judgment against him in favor of Sub-contractor and has also appealed the rejection of his reconventional demand against Sub-contractor. We reverse, setting aside the judgment in favor of Sub-contractor and rendering judgment in favor of Contractor in the sum of $3,000.00 on Contractor's reconventional demand.
The sub-contract called for installation of approximately 80,000 square feet of concrete parking area with the requisite curbing and other appurtenances, for a stipulated price of $54,000.00. The agreement provided the work was to be completed in sixty working days, commencing the week of March 8, 1971. Hebert and Abrahams, partners in the endeavor, rented a road grader from Burt for use on the project. Contractor had no connection whatsoever with the rental of the equipment.
Work on the project did not progress as originally anticipated. Sub-contractor apparently encountered financial difficulties to the extent that in July, 1971, Contractor began receiving communications from materialmen that Sub-contractor was delinquent in payment for materials furnished for the hospital paving project. On July 13, 1971, Contractor received a letter from one materialman indicating Sub-contractor's delinquency on an account of $526.84. Prior thereto, on June 30, 1971, Sub-contractor had assigned $10,000.00 of the amount due from Contractor, to payment of the claim of a materialman who had furnished redimixed concrete for the job in question. By mid-July, 1971, when the work was about 70% complete, Contractor had paid approximately $34,000.00 of the contract price directly to Sub-contractor and had paid about $8,000.00 to suppliers of materials for the job. From mid-July until about August 20, 1971, Sub-contractor performed little, if any, work on the project. Believing the work had been abandoned by Sub-contractor, Contractor arranged a meeting with Hebert and Abrahams, on the job-site, on or about August 20, 1971, to discuss the status of the job and Sub-contractor's affairs. Attending the meeting on behalf of Contractor were Robert Thibodeaux, owner of Contractor, Walter Newmann, Contractor's job superintendent in charge of the hospital project, and Nolan Graham, estimator for Contractor.
As was to be expected, Contractor's and Sub-contractor's versions of what transpired *720 at the meeting are in significant conflict. In essence Hebert testified that Contractor's representatives orally agreed to take over the project, finish the work and pay all claims for labor and materials already incorporated in the work as well as additional costs required to complete the project. He also stated it was agreed that if the work were finished and all claims paid for less than the contract price of $54,000.00, Contractor would refund Sub-contractor the difference whereas if there were a cost overrun, meaning that if completion cost more than the contract price, Contractor assumed sole responsibility for such excess. Hebert further testified that all parties present at the meeting then went to Burt's home, which was nearby, where Contractor's representatives spoke with Burt and agreed to pay Burt's claim. Hebert acknowledged having received a change order from Contractor, dated August 21, 1971, which he did not sign because it failed to recite that Contractor agreed to pay all costs incurred by Sub-contractor on the subject project. Hebert conceded, however, he did not communicate further with Contractor about the matter and that he did not return to the job-site.
Contractor's representatives testified the meeting disclosed Sub-contractor's financial condition to be such that Sub-contractor could not complete the work. It was orally agreed Contractor would complete the job. It was also agreed Contractor would issue a change order to the effect Contractor would complete the work, which order was issued under date of August 20, 1971, and sent to Contractor who refused to sign. The assembled parties went to Burt's home for the purpose of ascertaining the amount due Burt by Sub-contractor, concerning which there appeared to be a dispute between Burt and Sub-contractor. Contractor's representatives deposed that at no time did they discuss with Burt the matter of his claim against Sub-contractor, nor did they promise to pay Burt's claim. They also stated the sole purpose of the visit to Burt was for Sub-contractor to see if the precise amount due Burt could be agreed upon and that Hebert did all the talking with Burt.
They acknowledged agreeing to take over the project and pay all claims which constituted lienable items against the project. They acknowledged payment of several claims owed by Sub-contractor on the job and refusal to pay others, including Burt's. They expressly denied having orally promised, either Burt or Hebert, to pay Burt's claim.
The record adequately establishes that Contractor completed the work with an "overrun" of slightly more than $5,000.00, notwithstanding which Contractor reconvened for only $3,000.00.
Abrahams, defendant in the original demand, third party-plaintiff, and defendant in Contractor's reconventional demand, did not testify at the trial. Counsel for Hebert explained Abrahams' absence by noting that he had expected Abrahams to voluntarily appear. Hebert conceded Abrahams had not been subpoenaed and accounted for Abrahams' absence by noting that he did not know Abrahams' present whereabouts. We deem it most significant that Burt, who initiated this proceeding, did not make Contractor a party defendant in his demand, neither did he appear as a witness herein. The amount of Burt's claim against Sub-contractor was stipulated in the sum of $1,625.00 subject to Contractor's express denial of any liability therefor.
Relying upon Flick v. Salloum, La.App., 163 So.2d 143, and authorities cited therein, Contractor contends the trial court erred in receiving parol evidence to establish Contractor's alleged promise to pay Sub-contractor's debt to Burt. The record reflects, however, that upon Contractor's objection, the trial court ruled the evidence was admissible pursuant to LSA-C.C. Article 2277 which concerns proof by parol evidence of a contract in excess of $500.00, but that the testimony was inadmissible, pursuant to LSA-C.C. Article 2278, to prove an oral agreement to pay the debt of a third person. It further appears the evidence was admitted only for the purpose of establishing the alleged oral contract between Contractor and Sub-contractor.
*721 The rule that parol evidence is inadmissible to establish a promise to pay the debt of a third person is subject to the well recognized exception that such evidence is admissible to prove such a promise where the promisor has sufficient interest in the subject matter to constitute consideration for the promise. Gardiner v. Cleveland Motors, 16 So.2d 544; Collier v. Brown, 141 So. 405; Wallenburg v. Kerry, 16 La.App. 221, 133 So. 823.
LSA-C.C. Article 2277, pertinently states:
"All agreements relative to movable property, and all contracts for the payment of money, where the value does not exceed five hundred dollars, which are not reduced to writing, may be proved by any other competent evidence; such contracts or agreements, about five hundred dollars in value, must be proved at least by one credible witness, and other corroborating circumstances."
The testimony of plaintiff can serve as that of "one credible witness", for purposes of application of LSA-C.C. Article 2277. Aydell v. Fontaine Abbott Construction Company, Inc., 274 So.2d 484; Foshee v. Hand-Enis Realty Co., 237 So.2d 437.
Burt's oral testimony was clearly admissible pursuant to Article 2277, above. Assuming, solely for argument's sake, the parol evidence tendered was admissible for purposes of the exception to Article 2278, above, recognized in the Gardiner, Collier and Wallenburg cases, above, we find that Sub-contractor's third party demand must fall for lack of sufficient proof.
The unexplained failure of a witness to testify concerning important knowledge, which he possesses with respect to the issues involved in a lawsuit, is ground for presuming the witness's testimony would be unfavorable to the party failing to call him. Turner v. Southern Wheel and Rim Service, Inc., 322 So.2d 810; Bidwell v. Binnings Construction Company, 228 So.2d 240. This rule is especially applicable where the witness not called is a party to the action and could have been produced to substantiate the contentions of another party occupying the same position as the witness not called. In this instance Abrahams' interest and position is identical to that of defendant Hebert. It behooved Hebert to produce Abrahams to corroborate Hebert's version of the agreement reached at the meeting in question. We are not impressed with Hebert's testimony regarding his inability to communicate with Abrahams. The two men were former business partners. So far as the record shows, Abrahams was in the State of Louisiana. Moreover, we again note the statement of counsel for Sub-contractor that he had expected Abrahams to appear. Under the circumstances we conclude Abrahams, if called, would not have corroborated Hebert's testimony that Contractor agreed to pay Burt's claim. We also find it highly significant that Hebert did not subpoena Burt to corroborate the contention that Contractor agreed to pay Sub-contractor's debt to Burt. Moreover, had Burt received a promise from Contractor to pay the obligation, it is reasonable to presume Burt would have joined Contractor in the action.
We reject, as incredible, Hebert's testimony that Contractor agreed to assume the cost of any overrun incurred in completing the work and simultaneously agreed to remit to Sub-contractor the difference between total completion cost and contract price in the event the former were less than the latter. Where a dispute exists over the terms of a contract, the controversy must be resolved in the light of the principle that informed and experienced parties do not ordinarily bind themselves to unreasonable obligations. Oil Field Supply & Scrap Material Co. v. Gifford Hill & Co., 204 La. 929, 16 So.2d 483; J. H. Jenkins Contractor, Inc. v. City of Denham Springs, La.App., 216 So.2d 549. The record in this instance discloses that Robert Thibodeaux is an experienced contractor. His testimony leaves no doubt that he would not have consented to an agreement of the nature testified by Hebert.
We are cognizant of the well established rule that the findings of a trial court should not be set aside on appeal involving *722 consideration of factual determinations, save in a case of manifest error.
Under the circumstances we find that failure of third party plaintiffs to produce Abrahams and Burt as witnesses, must be construed to mean the testimony of said parties to this litigation would have been unfavorable to the position of third party plaintiffs, both as to their demands against Contractor and as to Contractor's reconventional demand. Considering the record, we find a total lack of corroboration of Hebert's testimony, either by another witness or established circumstances. We likewise find the record clearly preponderates in favor of Contractor's reconventional demand. We conclude the trial court manifestly erred in holding otherwise.
It is ordered, adjudged and decreed that the judgment of the trial court in favor of third party plaintiffs C. J. Hebert, Jr. and Vernon Abrahams, against third party defendant Robert Thibodeaux and Company, Inc., be and the same is hereby annulled, reversed and set aside and judgment rendered herein in favor of said third party defendant dismissing and rejecting said third party plaintiff demand, with prejudice.
It is further ordered, adjudged and decreed that the judgment of the trial court rejecting the demands of third party defendant in reconvention, Robert Thibodeaux and Company, Inc., against third party plaintiffs in reconvention C. J. Hebert, Jr. and Vernon Abrahams, be and the same is hereby annulled, reversed and set aside and judgment rendered herein in favor of said reconvenor against said defendants in reconvention, in the full sum of Three Thousand ($3,000.00) Dollars, with legal interest thereon from date of judicial demand, until paid, all costs of these proceedings to be paid by third party plaintiffs C. J. Hebert, Jr. and Vernon Abrahams.
Reversed and rendered.