SCHOTT, Judge.
Plaintiff, a judgment creditor of George P. Mandella, made a seizure on September 15, 1975, of Topaz Lounge 123, operated by him in New Orleans. While the seizure was in effect plaintiff’s counsel was contacted by Dickie Lyons, an employee of defendant. Thereafter the seizure of Mandella’s lounge was called off, and on October 8, 1975, defendant paid plaintiff $500 on account of Mandella’s debt.
Plaintiff brought this suit for the balance of Mandella’s debt ($1021.25 plus interest, attorney’s fees and costs). According to plaintiff, Lyons had agreed that if the seizure were called off defendant would pay half of the debt immediately and the rest within ten days.[1]
Defendant denied that the agreement was made by Lyons and denied his authority to bind the company in any event. Defendant also took the position that plaintiff’s suit was one to enforce the promise by defendant to pay the debt of a third person (Mandella), which was not susceptible to proof by parol evidence under LSA-C.C. Art. 2278, after a trial judgment was rendered in favor of plaintiff as prayed for.
The trial judge gave no reasons for judgment initially, but in denying defendant’s application for a new trial he stated that Art. 2278 was inapplicable to the facts of this case, quoting from Fuselier v. Hudson, 93 So.2d 266 (La.App. 1st Cir. 1957):
“. . . where the promisor has a material interest in making the promise, and receives consideration therefor. In such an instance the promisor binds himself to pay the debt, making his own obligation the primary obligation. Coreil v. Vidrine, 188 La. 343, 177 So. 233; Collier v. Brown, 19 La.App. 567, 141 So. 405; Wallenburg v. Kerry, 16 La.App. 221, 133 So. 823.”
On appeal defendant contends that Art. 2278 applies here and disputes the trial court’s finding that it had a material interest in promising to pay Mandella’s debt. It also contends that Lyons’ promise was not binding on it because he had no authority to make the contract.
On the first issue it was established that defendant was rather deeply involved in Mandella’s business. It had placed its coin machines in the various locations where Mandella operated lounges with the understanding that Mandella would receive commissions from the proceeds of the machines. Some of Mandella’s loans, as well as the lease on one of Mandella’s locations, were guaranteed by defendant. The exact *1285 amount of such loans outstanding at the time of plaintiff’s seizure was not established, but between April, 1975, and the date of the seizure defendant had paid either to Mandella or his creditors the sum of $7334, and by May, 1977, just before trial this amount had grown to $46,172. Significantly, Mandella was discharged in bankruptcy in April, 1976, on his petition filed in December, 1975. Most of the payments defendant made on the loans to Mandella were subsequent to the institution of his bankruptcy proceedings. These facts and reasonable inferences therefrom liken the case to Wallenburg v. Kerry, 16 La.App. 221, 133 So. 823 (2nd Cir. 1931), in which the court found the provisions of Art. 2278 inapplicable with the following:
“The weight of authority interpreting statutes of this kind is to this effect: That, if the agreement to pay the obligation of a third person is merely a collateral undertaking, it comes within the statute of frauds; but, if such agreement is independent, not made primarily to answer for another, but is impelled from pecuniary or business motives, accruing to the promisor, then it does not fall within the statute, and parol testimony is admissible to establish same.”
Also, the arrangement defendant had with Mandella by which his loans were being paid out of defendant’s machines likens the case to Fabacher v. Crampes, 166 La. 397, 117 So. 439 (1928) where the court held:
“. . . the prohibition against the admission of parol evidence to prove a promise to pay the debt of another, does not apply (1) when the promise is made, upon adequate consideration, to the debt- or himself, or (2) when the promise, even though made to the creditor, is given with the consent of the debtor, and the promisor has in his hands, or afterwards receives, money or property belonging to the debtor, to be applied to the debt. For in both these eases it is an original and direct undertaking by the promisor towards the debtor himself, and not at all a collateral undertaking to pay the debt of another.”
From the foregoing we have concluded that the trial judge correctly dealt with the first issue of parol proof, and turn now to the issue of whether or not defendant was bound to the agreement made by Lyons.
Defendant is a partnership composed of John J. Elms, Jr. and his two sisters. Dick-ie Lyons was a public relations representative of the company. The only contact plaintiff had with defendant was through Lyons. According to Lyons he had authority from his supervisor and from Elms to pay the $500 but not to assume the entire balance. Elms testified that he told Lyons to see if it was possible to avoid a seizure of Mandella’s place by loaning him some more money, and he admitted authorizing Lyons to commit the $500.
As in Radiophone v. Oxford Bldg. Services, Inc., 347 So.2d 327 (La.App. 4th Cir. 1977), it seems clear that Lyons was not authorized by defendant to contract in its behalf, but:
“. . . The issue is whether plaintiff might reasonably have assumed from the circumstances that Richard had authority to act for the corporation or whether its representatives had the obligation to verify with the defendant the agency relationship before it could be bound.”
The court there decided the case for the plaintiff on the basis of C.C. Art. 3000, which provides:
“Powers granted to persons, who exercise a profession, or fulfill certain functions, or doing any business in the ordinary course of affairs to which they are devoted, need not be specified, but are inferred from the functions which these manda-taries exercise.”
However, the facts of that case were quite different. The person contracting for defendant was the manager of defendant’s facility at the airport and supervised 21 employees. The equipment sold was demonstrated at defendant’s office at the airport. The court held that it was not unreasonable for plaintiff’s representative to infer that she was dealing with a representative who was authorized to bind his company-
*1286 In Dart Distribution, Inc. v. Foti Enterprises, Inc., 271 So.2d 705 (La.App. 1st Cir. 1972), the court held a corporation liable for carpets purchased by its representative for his personal use. But the transaction had been preceded by numerous transactions in which the representative had made purchases for defendant. Thus, the case fell squarely under the aegis of Art. 3000, there being a logical inference of authority in the particular disputed transaction flowing from previous dealings between plaintiff and the agent.
There is no evidence that our plaintiff ever dealt with Lyons before the day of the seizure. There was no basis for plaintiff to think that Lyons had his employer’s authority to bind it to pay off another’s debt. The inference which plaintiff drew of Lyons’ authority was based solely upon Lyons’ statements to plaintiff’s attorney. Plaintiff makes much of a letter its attorney wrote to Lyons on the day after the seizure confirming that defendant would pay Mandella’s debt, but there is no evidence that anyone other than Lyons ever saw the letter. There is no evidence that Elms or any other authorized agent of defendant did or said anything which would lead plaintiff to believe that Lyons was authorized to bind defendant.
In the final analysis, plaintiff’s only contact with defendant was through Lyons and it acted at its own peril when it failed to inquire into his authority to bind defendant.
Accordingly, the judgment appealed from is reversed and there is judgment in favor of defendant, TAC Amusement Company, and against plaintiff, Winston Network, Inc., dismissing its suit at its cost.
REVERSED AND RENDERED.

. The debt amounted to $2155.79 but plaintiffs attorney testified that when he received $500 from defendant he thought this was close enough to half and he believed defendant was in good faith.