This is a controversy over the distribution of the net proceeds of sale of a herd of dairy cattle belonging to defendant and sold under foreclosure of a chattel mortgage for $5,000 given by defendant to plaintiff. Said net proceeds amount to $3,331, of which plaintiff has retained on account of his claim the sum of $1,596.50, for cattle bid in by himself, and the balance, amounting to $1,734.50, being the amount paid for cattle bid in by other parties, is still held in cash by the sheriff.
The only question presented is whether one Jules Mayronne 
Son, a creditor of defendant for $593.15, and one A. Beninati 
Co., also a creditor for $595, shall be paid by preference over plaintiff whose claim, at the time of the foreclosure, amounted to $3,082.80, composed of cash loaned by plaintiff to *Page 399 
defendant, amounting, with interest, to $1,653.30, plus $300 due him for rent, and $1,129.50 of debts due by said defendant and paid by plaintiff, to wit: To Hourcade, $594.50; to Hodges, $380; and to Alvis, $175.
 I.
The circumstances under which said chattel mortgage was given are as follows: Defendant owed plaintiff $1,653.30 as above said (the $300 for rent accrued afterwards); he also owed sundry other debts, to wit: Hourcade, $921.75; Hodges, $380; Alvis, $175; Mayronne Son, $593.15; Beninati Co., $595; Gas Steel, $271; Gumbel Weiss, $100; and Reo Truck, $572.54 — amounting in all, including the $1,653.30 due plaintiff, to $5,261.74.
His creditors were pressing him and he had no cash with which to pay them; he had no credit, and was unable to obtain supplies for his dairy. He was about to abandon everything, leaving his creditors to take care of themselves.
But Hourcade, who also ran a dairy and had sales for more milk than he could himself produce, wanted the milk from defendant's herd, and therefore persuaded plaintiff to assist defendant to remain in business as follows:
Plaintiff took this chattel mortgage for $5,000 on everything that defendant owned. Defendant's creditors were induced to withhold action on their claims, and to extend further credits to defendant, on the assurance that he had made provisions for their payment by the aforesaid chattel mortgage.
A collateral agreement was then entered into between plaintiff and defendant by which it was declared that said mortgage was given as collateral security only, "for all moneys now due said Albert Fabacher, and all moneys which he might advance to the said John Crampes, and all bills which he might pay for his account; which bills and the amount due said Fabacher are estimated at $5,300" *Page 400 
[the actual amount being $5,261.74, as above said].
It was further agreed, in substance, that Crampes should continue to operate said dairy, but incur no further expense in operating same without the consent of plaintiff or said Hourcade; that he should turn over to said Hourcade for sale all the milk from said herd; that he should receive $25 per week for living expenses; that the proceeds of the sale of the milk, after deducting living expenses and operating expenses, should be turned over to plaintiff for the purpose of paying off the above-mentioned debts.
But the plan was not altogether successful. Hourcade's debt was reduced to $574.50, the Reo Truck was paid in full, Gumbel 
Weiss claim was compromised, Gas Steel was disposed of in some way not made clear. Plaintiff paid out of his own pocket the balance of Hourcade's claim, $574.50; also the claim of Hodges, $380, and of Alvis, $175. The claims of Mayronne Son, $593.15, and of Beninati Co., $595, were left unpaid. Then plaintiff foreclosed as aforesaid.
 II.
We agree with the district judge that the evidence shows, and the above recital confirms it, that the chattel mortgage was given by defendant to plaintiff for the express purpose of taking care of the (estimated) $5,300 of debts then outstanding, and upon the assurance given him (and said creditors) that said debts would be paid or taken care of by plaintiff.
The trial judge says:
 "The court finds from the preponderance of evidence that plaintiff and defendant intended and agreed that the contract and chattel mortgage were made in consideration that plaintiff would pay off all of defendant's debts existing at the time of the contract; * * * that the chattel mortgage and contract entered into between plaintiff and defendant were for the purpose of taking care of defendant's outstanding indebtedness, and that plaintiff would pay same, and to keep the outstanding creditors from seizing *Page 401 
the dairy and putting it out of business; plaintiff's purpose being to keep the dairy in operation so that, as shown by the contract, he was insured of the purchase of the milk produced by the dairy."
 III.
The only question of law presented is whether parol evidence should have been admitted (as it was) for the purpose of showing that plaintiff promised to pay said debts, i.e., the debts of another.
We think it was; the prohibition, against the admission of parol evidence to prove a promise to pay the debt of another, does not apply (1) when the promise is made, upon adequate consideration, to the debtor himself, or (2) when the promise, even though made to the creditor, is given with the consent of the debtor, and the promisor has in his hands, or afterwards receives, money or property belonging to the debtor, to be applied to the debt. For in both these cases it is an original and direct undertaking by the promisor towards the debtor himself, and not at all a collateral undertaking to pay the debt of another. 27 Corp. Jur. pp. 136, 140, verbo, "Frauds, Statute of," §§ 23, 27; 25 Ruling Case Law, pp. 504, 506, §§ 87, 89. Such is the case here.
 IV.
Under the circumstances it is clear that plaintiff cannot compete with the interveners (Mayronne and Beninati) in the distribution of the proceeds of the cattle sold to satisfy the chattel mortgage herein foreclosed upon.
The trial judge therefore correctly allowed Mayronne Son and Beninati Co. the full amount of their claim, with legal interest from judicial demand (meaning from date of intervention), and costs, payable by preference and priority over plaintiff out of the funds in the hands of the sheriff, the balance of said fund (less costs, if any) to be turned over to plaintiff upon his claim against defendant. *Page 402 
 Decree.
The judgment appealed from is therefore affirmed; all costs to be paid out of the funds in the hands of the sheriff.
O'NIELL, C.J., takes no part.