604 So.2d 656 (1992)
FLEET FINANCE, INC.
v.
The LOAN ARRANGER, INC., George P. Bevan, Joseph E. Juban, and Edward L. McIntyre.
No. 91 CA 0448.
Court of Appeal of Louisiana, First Circuit.
June 29, 1992.
*657 Richard A. Curry, Baton Rouge, for plaintiff-appellant Fleet Finance, Inc.
Fred Tully, Baton Rouge, for defendant-appellee Norman Pearah.
Mary Olive Pierson, Baton Rouge, for defendant-appellee Joseph E. Juban.
George P. Bevan, in pro per.
Before WATKINS, CARTER and WHIPPLE, JJ.
WATKINS, Judge.
Fleet Finance appeals a summary judgment in favor of Joseph Juban dismissing him from its suit on a continuing guaranty agreement. Because of the existence of disputed material issues of fact, we reverse.

FACTS
On September 3, 1985, Fleet Finance, Inc. (Fleet) entered into a purchase agreement with The Loan Arranger, Inc. (Loan Arranger) whereby Fleet agreed to purchase certain retail installment sales contracts, promissory notes, credit accounts, and other documentation from Loan Arranger. Pursuant to the terms and conditions of the purchase agreement, Fleet purchased various accounts, notes, and other documentation from Loan Arranger. The purchase agreement provided that in the event accounts or notes purchased by Fleet should become delinquent or uncollectible, then Loan Arranger would be obligated to repurchase the accounts or notes. The purchase agreement further provided that Loan Arranger would indemnify Fleet against any loss, including all costs and attorney's fees, arising from a breach of any obligations under the purchase agreement.
In conjunction with the purchase agreement three individuals, Norman Pearah, George Bevan, and Edward L. McIntyre, executed a continuing guaranty agreement whereby each agreed to pay on demand all losses, costs, attorney's fees, and expenses suffered by Fleet because of Loan Arranger's default of the purchase agreement.[1] The guarantors further agreed that Fleet could proceed against them without first proceeding against the Loan Arranger or liquidating any assets.
In March 1986, Mr. Pearah, one of the original guarantors, approached Fleet and requested a release from his individual obligation under the guaranty. Mr. Pearah suggested that Joseph E. Juban, a business associate, could be substituted as a guarantor. Based upon Mr. Pearah's representations, Fleet agreed to substitute Mr. Juban for Mr. Pearah on the continuing guaranty. On March 12, 1986, an addendum to the continuing guaranty was executed by Mr. Pearah, Mr. Bevan, and Mr. McIntyre, substituting Mr. Juban for Mr. Pearah on the original guaranty agreement. It is undisputed that Mr. Juban did not sign his name to the addendum; that his law partner, Mr. Bevan, affixed Mr. Juban's name to the addendum without any proviso that he was signing as agent for Mr. Juban.
When several of the purchased loans became delinquent, Fleet made demand on Loan Arranger to repurchase. Despite amicable demand, Loan Arranger refused to repurchase the accounts and notes tendered by Fleet. Fleet thereafter terminated the agreement between it and the Loan Arranger on June 20, 1986.
On March 24, 1987, Fleet filed suit against Loan Arranger and all the guarantors including appellee, Joseph E. Juban. On October 12, 1988, Edward L. McIntyre was dismissed from the suit, without prejudice, on motion of the plaintiff. On August 10, 1990, a partial summary judgment was granted in favor of Fleet against George P. Bevan in the principal amount of $774,504.41, together with interest accrued before December 1, 1989, in the amount of $461,814.81, interest accruing after December 1, 1989, specified attorney's fees, and costs.
*658 Thereafter, Mr. Juban filed a motion for summary judgment alleging that he did not execute the addendum agreement dated March 12, 1986. In support of his allegations he attached his deposition and that of Mr. George Bevan. On November 13, 1990, summary judgment was granted in favor of Joseph Juban dismissing him from the suit. Fleet appealed the judgment, urging that the trial court erred in granting summary judgment in favor of Joseph Juban because material issues of fact exist with respect to Mr. Juban's liability to Fleet under the terms of the addendum to the guaranty. Specifically, Fleet contends that Mr. Bevan had actual authority or actual authority by implication to execute the addendum on Mr. Juban's behalf. Furthermore, Fleet argues that even if Mr. Bevan lacked authority, Mr. Juban ratified and/or is estopped from denying the act of Mr. Bevan in signing the Addendum on Mr. Juban's behalf.

SUMMARY JUDGMENT
Summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966. Only when reasonable minds must inevitably conclude that the mover is entitled to judgment as a matter of law on the facts before the court is a summary judgment warranted. The burden of proving that there is no genuine issue of material fact in dispute is upon the mover. Munson v. Safeco Insurance Company, 411 So.2d 578, 579-80 (La.App. 1st Cir.1982).
The sole basis for recovery by Fleet against Mr. Juban arises from the March 12, 1986 addendum to the continuing guaranty executed on September 3, 1985. Mr. Juban contends that he cannot be held liable on the continuing guaranty because Mr. Bevan was not authorized to sign the addendum on his behalf.

APPLICABLE LAW
LSA-C.C. art. 2985 provides:
A mandate, procuration or letter of attorney is an act by which one person gives power to another to transact for him and in his name, one or several affairs.
LSA-C.C. art. 2992 provides:
A power of attorney may be given, either by a public act or by a writing under private signature, even by letter.
It may also be given verbally, but of this testimonial proof is admitted only conformably to the title: Of Conventional Obligations.

LSA-C.C. art. 2996 provides:
A mandate conceived in general terms, confers only a power of administration.
If it be necessary to alienate or give a mortgage, or do any other act of ownership, the power must be express.
LSA-C.C. art. 2997 states:
Thus the power must be express and special for the following purposes:
To sell or to buy.
To incumber or hypothecate.
To accept or reject a succession.
To contract a loan or acknowledge a debt.
To draw or indorse bills of exchange or promissory notes.
To compromise or refer a matter to arbitration.
To make a transaction in matters of litigation; and in general where things to be done are not merely acts of administration, or such as facilitate such acts.
LSA-C.C. art. 3000 states:
Powers granted to persons, who exercise a profession, or fulfill certain functions, or doing any business in the ordinary course of affairs to which they are devoted, need not be specified, but are inferred from the functions which these mandataries exercise.
An agency relationship cannot be presumed; it must be clearly established. Duplessis Cadillac, Inc. v. Creative Credit Services, Inc., 564 So.2d 336, 338 (La.App. 1st Cir.1990). The party asserting the relationship has the burden of establishing the existence of an agency relationship.
*659 Actual authority is created expressly by the verbal or written agreements between the agent and the principal. LSA-C.C. art. 2992. Verbal agreements, however, may only be proven in accordance with the title: "Of Conventional Obligations." LSA-C.C. art. 2992.
In Title III, Chapter 5 of the Louisiana Civil Code, entitled Proof of Obligations, we find:
LSA-C.C. art. 1847 which provides:
Parol evidence is inadmissible to establish either a promise to pay the debt of a third person or a promise to pay a debt extinguished by prescription.
Generally, the promise to pay the debt of a third party, and any mandate authorizing an agent to bind his principal to pay the debt of a third party, can only be proved by a writing. Surplus Underwriters, Inc. v. Simmons, 236 So.2d 530 (La. App. 4th Cir.), writ refused, 256 La. 893, 240 So.2d 231 (La.1970); Ray's Appliance, Etc. v. K & D Enterprises, 350 So.2d 228 (La.App. 3d Cir.), writ denied, 352 So.2d 1032 (La.1977).[2] However, a well recognized exception to this rule was set forth in Fabacher v. Crampes, 166 La. 397, 117 So. 439 (1928), wherein the court held that:
[T]he prohibition against the admission of parol evidence to prove a promise to pay the debt of another, does not apply (1) when the promise is made, upon adequate consideration, to the debtor himself, or (2) when the promise, even though made to the creditor, is given with the consent of the debtor, and the promisor has in his hands, or afterwards receives, money or property belonging to the debtor, to be applied to the debt. For in both these cases it is an original and direct undertaking by the promisor towards the debtor himself, and not at all a collateral undertaking to pay the debt of another.[3]
Fabacher, 166 La. at 402, 117 So. at 441. See also Burke v. Elmer Candy Company, 251 So.2d 786, 787 (La.App. 1st Cir. 1971).
Consistent with the application of the rules of obligations to that of mandate, as required by LSA-C.C. art. 2992, we conclude that a mandate to authorize an agent to bind his principal to pay the debt of another may also be proved by parol evidence where the principal has a material interest in making the promise and receives consideration for it.
In the instant case the deposition testimony of Mr. Bevan, Mr. Juban, and Mr. Pearah reveals that the addendum was executed for the purpose of releasing Norman Pearah from the continuing guaranty in order for Mr. Pearah to invest in a race track venture in Indianapolis. Apparently Mr. Pearah was willing to give or sell a portion of the Indianapolis venture to Mr. Bevan and Mr. Juban if Mr. Juban would agree to substitute himself on the continuing guaranty for Mr. Pearah.
Mr. Bevan and Mr. Juban were law partners and also invested together with their other law partners in various ventures. It was generally agreed among the partners that, because Mr. Bevan was intimately involved with the Loan Arranger venture, he made the investment decisions for everyone. Mr. Bevan testified that he discussed the matter with Mr. Juban and that he had the "impression" that he was authorized to sign the addendum on Mr. Juban's behalf. Mr. Juban testified that he understood that "it would be necessary for Mr. Pearah to get off of that obligation with *660 Fleet and that one of the possible solutions to that would be to substitute me." Mr. Juban was also interested in participating in the Indianapolis venture and expected Mr. Bevan to negotiate the substituted guaranty on his behalf.
We believe that disputed factual issues exist with regard to whether Mr. Juban made a verbal agreement to assume Mr. Pearah's obligation on the continuing guaranty and whether he had a material interest in making the promise and received consideration for it.

RATIFICATION
We are further convinced that even if the mandate were deemed insufficient, there are disputed material issues of fact regarding ratification.
LSA-C.C. art. 1843 provides:
Ratification is a declaration whereby a person gives his consent to an obligation incurred on his behalf by another without authority.
An express act of ratification must evidence the intention to be bound by the ratified obligation.
Tacit ratification results when a person, with knowledge of an obligation incurred on his behalf by another, accepts the benefit of that obligation.
The principles of ratification were explained by this court in Bamber Contractors v. Morrison Engineering, 385 So.2d 327, 331 (La.App. 1st Cir.1980):
Unless a principal expressly ratifies the acts of an agent who has exceeded his authority, the agent alone is bound. LSA-C.C. Arts. 3010, 3013, 3021.
Ratification, in the law of agency, is the adoption by one person of an act done on his behalf by another without authority. Ratification amounts to a substitute for prior authority. The burden of proving ratification is on the party asserting it, and to find ratification of an unauthorized act, the facts must indicate a clear and absolute intent to ratify the act, and no intent will be inferred when the alleged ratification can be explained otherwise. Ratification will occur when the principal, knowing of the contract, does not repudiate it but accepts its benefits. (Citations omitted.)
The plaintiff contends that Mr. Juban either ratified or is estopped from denying the act of Mr. Bevan in signing the addendum. Plaintiff points out that Mr. Juban did not repudiate his signature upon discovering that Mr. Bevan had signed the addendum and that Mr. Juban took advantage of the benefits to be realized by its execution.
Mr. Bevan first testified that Mr. Juban saw the addendum before it was executed but did not see it after it was executed until the matter "came to a head." Mr. Bevan later stated that he did not know whether Mr. Juban saw the addendum. He also stated that he and Mr. Juban discussed the addendum "several months" after it was executed. Mr. Bevan also recalled that when Mr. Juban discovered that his name had been signed to the addendum he requested that Mr. Pearah execute a hold harmless agreement and he inquired into the progress of the racetrack venture. Mr. Juban's testimony is quite different; Mr. Juban could not recall the date that he first learned that his name was on the Addendum, but he did remember that he discovered this fact from the attorney for Fleet when Mr. Juban was contacted about payment on the continuing guaranty. Mr. Pearah stated in his deposition that Mr. Juban was aware that he was bound on the debt and that Mr. Juban insisted on a hold harmless agreement from Mr. Pearah.
We believe that the facts established on the motion for summary judgment are in dispute regarding when Mr. Juban became aware of the fact that Mr. Bevan signed the addendum and what action Mr. Juban took based on his discovery. Disputed issues of fact also exist with regard to the hold harmless agreement executed by Mr. Pearah and the proposed Indianapolis racetrack venture. Based upon these and other disputed issues, we find that summary judgment in this matter was inappropriate.
For the reasons expressed, the judgment of the trial court granting summary judgment in favor of Mr. Joseph Juban is reversed. *661 This matter is remanded for further proceedings. Costs are to await final disposition of this matter.
REVERSED AND REMANDED.
NOTES
[1] Norman Pearah, Edward L. McIntyre, and George Bevan were the president, vice-president, and secretary/treasurer, respectively, of The Loan Arranger, Inc. Mr. Pearah owned 50% of the outstanding stock, Mr. McIntyre owned 25%, and Mr. Bevan, along with his three law partners, owned the remaining 25%.
[2] Fleet argues that the principles set forth in Surplus Underwriters and Ray's Appliance no longer apply because the cases were decided prior to the Civil Code revisions of Articles 2278 and 2997. We find no merit to this argument. Although new Civil Code Article 1847 does not specifically require that an agent's authority to acknowledge his principal's promise to pay the debt of a third person be in writing, we do not believe that the law has changed in this regard. See LSA-C.C. art. 1847 comment (a). The language of Article 1847 clearly prohibits parol evidence to establish a promise to pay the debt of a third person. According to LSA-C.C. art. 2992 this same rule must be applied to mandates authorizing an agent to acknowledge his principal's promise to pay the debt of a third person.
[3] We note that the comments to LSA-C.C. arts. 1823 and 1847 specifically provide that the jurisprudential exception set forth in Fabacher and its progeny has not changed.