JjDENNIS R. BAGNERIS, SR, Judge.
Parish National Bank (“PNB”), appeals the decision of the trial court finding Dr. Ott not liable to the bank on the master note executed by Dr. Ott and his wife, Beverly (Ott) Gallavan. The court held that Dr. Ott’s actions in connection with draw request forged by his wife were not the most compelling and contributing factors in this action and ruled in favor of Dr. Ott, dismissing PNB’s action. The trial court also dismissed Dr. Ott’s Reconven-tional Demand against PNB for damages to his credit due to PNB’s reporting the default on the note. Because there were no damages rendered against Dr. Ott, the trial court dismissed his cross claims against Ms. Gallavan.

STATEMENT OF THE CASE

Norman Ott and his wife, Beverly Galla-van, executed a master note representing a $100,000 line of credit in May of 1994. After the $1000 initial draw required to open the credit account, future draw requests required the signatures of both Dr. Ott and Ms. Gallavan. Throughout 1994 draw requests were submitted to PNB purportedly signed by both Dr. Ott and Beverly Gallavan. Dr. Ott testified that he did not sign the draw requests, never authorized Gallavan to sign his name, | {.and was unaware that the line of credit was being accessed at all by Gallavan until October of 1994.
After learning of the forgeries, Dr. Ott requested that PNB not allow further draws from the line of credit without his express verbal authorization. After the Otts separated in 1995 Dr. Ott made a single interest payment on the account. This was the first interest payment made by Dr. Ott since the account had been opened. Dr. Ott testified that this payment was made for the sole purpose of protection as maker on the loan. After the note was placed in default in 1995, PBN reported the default to credit reporting agencies. Dr. Ott brings a cross claim against PNB for. damages to his credit reputation based on this reporting.
On May 31st, 1996, a default judgment was rendered against Gallavan in the amount of $99,105.00 plus interest and attorneys fees. PNB based its claim against Dr. Ott primarily on the theories of ratification or confirmation of the debt, estop-pel-, and breach of a duty to both supervise his wife and to timely notify the bank of unauthorized activities. The district court did not find any of these arguments by PNB to be persuasive. Instead the court held that the contributing factor in the action was the PNB’s failure to exercise commercially reasonable banking standards.
The court presented the following evidence as support of this holding:
1) PNB did not have written policies or procedures for verification of signatures. Mr. Seal, PNB’s representative, admitted that he did not verify Dr. Ott’s signature for every draw request, and when he did, he relied on his familiarity with Dr. Ott’s signature.
2) PNB allowed faxed draw requests without follow-up of the originals. It did this without approval from the bank’s loan committee. The court | ¡¡specifically held that although the *297 Otts requested the use of faxed draws, this alone did not relieve PNB of its duty to impose safeguards.
3) PNB wired the funds from the draw requests into a Hibernia account in the name of Gallavan. The court emphasized that there were no established procedures at PNB for this type of transaction.
The trial court concluded that PNB’s actions and their lack of sound banking procedures created this situation, and Dr. Ott’s actions were not the controlling factor in the outcome. It found no ratification on the part of Dr. Ott and that his actions with respect to notification of the bank were reasonable under the circumstances.

LAW AND DISCUSSION

The Appellants do not assert any error in the trial courts findings of fact, merely in its conclusions of law. Therefore they are merely asking this Court to determine whether the trial court was legally correct, giving no special weight to the findings of fact by the trial court. All of the trial court’s legal conclusions however are based, to some degree, on findings of fact. Those facts are therefore subject to review where appropriate. Thus, the primary issue in this court is whether the trial court was legally correct in denying PNB’s claims for relief.

Confirmation and Ratification

The first contention of PNB is that Dr. Ott provided confirmation of the draw activity by Gallavan. Their primary evidence of this confirmation is the interest payment made by Dr. Ott on April 27, 1995, to bring the outstanding interest on the account current. According to PNB this payment constitutes partial performance of the agreement and an acknowl-edgement of the debt. The bank 14claims that this performance, combined with the knowledge of the fraudulent activity that had occurred on the account, shows that Dr. Ott recognized his liability on the note.
After the forgery of Dr. Ott’s signature on the draw requests was established at trial, the Appellant asserted that Ott’s actions constituted tacit ratification or confirmation. Louisiana Civil Code article 1843 states;
Ratification is a declaration whereby a person gives his consent to an obligation incurred on his behalf by another without authority.
An express act of ratification must evidence the intention to be bound by the ratified obligation.
Tacit ratification results when a person, with knowledge of an obligation incurred on his behalf by another, accepts the benefit of that obligation.
The Appellant argues that Dr. Ott’s conduct constituted a tacit ratification since he accepted the benefit of an obligation knowing that it was incurred on his behalf. In support of this argument PNB cites Gallioto v. Trapani, 238 La. 625, 116 So.2d 2703, 276 (1959), which states the law of ratification. “An unauthorized contract of an agent is ratified by the principal, who, when notified of such contract, does not immediately repudiate it, but accepts the benefit arising under such contract.” This argument however relies on acceptance of an agency relationship between Ott and Gallavan. I do not believe that the Appellants have successfully established that such a relationship existed between them.
The Appellee asserts that the Appellant’s reliance on case law discussing ratification by a husband of his wife’s conduct from other jurisdictions is unwarranted. We agree.
|5In Nationwide Finance Co. of Gretna, Inc. v. Pitre, this court specifically addressed ratification, by a husband, of *298 forged signatures by his wife. In that case this court specifically stated;
For ratification of an unauthorized act, the facts must indicate a clear and absolute intent to ratify the act, and no intent will be inferred when the alleged ratification can be explained otherwise. Lacaze v. Kelsoe, 185 So. 676 (La.App. 2 Cir.1939); Derouen’s Estate v. General Motors Acceptance Corp., 245 La. 615, 159 So.2d 695 (1964); Williams v. Arkansas Louisiana Gas Company, 193 So.2d 78 (La.App. 2 Cir.1966).
In making payments on the account, Mr. Pitre clearly did not intend to be bound on the note. While Mr. Pitre felt that he was legally bound on the note until he consulted an attorney, at no time did he desire to be bound on the note or intend to ratify the forged signature. Nationwide Finance Co. of Gretna, Inc. v. Pitre, 243 So.2d 326, 328 (La.App. 4 Cir.1971).
In the instant case, Dr. Ott’s payment of the interest can easily be explained as an act other than ratification. As the trial court stated in its reasons for judgment, Dr. Ott claims that the interest payment was made to protect himself, not ratify his wife’s fraudulent activities, and that statement by Dr. Ott was deemed credible. The Appellant also argues that this payment by Dr. Ott shifts the burden of proof. According to Litvinoffs treatise on obligations, the Appellant claims Dr. Ott must now prove no obligation existed. The Lit-vinoff treatise however has no authority over this Court nor does the burden of proof shift to Dr. Ott in this case.
The Appellant also must show knowing acceptance of benefits from Mrs. Ott’s actions. PNB attempts to show this two ways. The first attempt by PNB to show acceptance of benefits is the transfer of title to a piece of property in Yscloskey, Louisiana as an apparent “donation”. The appellee successfully counters this description of the property transfer by evidence of Dr. Ott’s payment of $5,000 and adoption of mortgage payments on the property. Second the Appellant argues that money from the fraudulent draws was used for purchase, |firenovation, and improvement of the Yscloskey property. Louisiana law states that the benefit for ratification must be a direct benefit. The benefit must be traceable directly to Dr. Ott. Nationwide Finance Co. of Gretna, Inc. v. Pitre, supra. The Appellee asserts that draw requests cannot possibly be traced directly to Dr. Ott, as Ms. Gallavan herself stated that it is impossible for PNB or anyone else to determine the source of any particular expenditure used. Additionally, even if it could be shown that Dr. Ott received a direct benefit from the fraudulent PNB draws, the benefit must be knowingly received, not forced. Fleet Finance, Inc. v. Loan Arranger, 604 So.2d 656, 660 (La.App. 1 Cir.1992).

Equitable Estoppel

Next the Appellant argues that Dr. Ott’s conduct estops him from denying his liability on the note. The Appellant bases this argument on the Louisiana Supreme Court’s application of the Restatement (Second) Agency § 8B in Independent Fire Insurance Co. v. Able Moving and Storage Co., Inc., 650 So.2d 750 (La.1995). This is based on the argument that PNB changed its position based on the belief that the transaction was entered into by him. Because Dr. Ott became aware that PNB believed he had agreed to the draw requests, and yet did nothing to correct that mistaken belief, he is estopped from denying liability for the loan.
The Appellee argues that the Appellant’s reliance on Independent Fire is misplaced. Rather than adopting the Restatement (Second) Agency as the appellant claims, the issue in the case dealt *299 specifically with apparent authority. The application of section 8B of the restatement in that case was to whether a national moving company was liable for fire loss caused by its insolvent agent. It involved a case of clear agency, whereas here, there is no clear agent/principal relationship. Ott argues that there is no principal/agent relationship between Ott |7and Gallavan, and there cannot be any apparent authority. As a result, application of Independent Fire to the facts of this case is not helpful.
The Appellant fails to prove such an agency relationship existed. The definition of a principal is one who has permitted or directed another to act for his benefit and subject to his direction and control and an “agent” is a person who has undertaken to act for another and be controlled by the other in so acting. The trial court stated that there is no evidence that such an agency relationship existed between Ott and Gallavan. PNB never advanced money to Gallavan believing that she was acting as an agent of Dr. Ott. In the Appellant’s reply brief, they admit that there is no community regime in this case, yet they seem to rely on the spousal agency presumption to justify their contention that there was an agency relationship between Dr. Ott and Gallavan.

Duty

A large portion of the Appellant’s argument concerning Ott’s duty uses case law under the Uniform Commercial Code (UCC) provisions in Louisiana Revised Statute Title 10, to illustrate a person’s duty of care in cases of forgery; specifically La. R.S. 10:3-406. As the Appellant notes, these provisions are not directly applicable to the draw requests at issue in this case since the draw requests are not “instruments” as defined in the UCC. The appellant argues that even under 10:3-406, the comments make it clear that acts by a person whose failure to “exercise ordinary care substantially contributes to ... the making of a forged signature” ■ must be direct.
Additionally, the appellee urges that a duty cannot be created where one does not legally exist, and the duty the appellant tries to analogize from Title 10 does not apply to the facts of the present case. Even applying La.R.S. 10:3-406, | sthe failure to exercise due care must substantially contribute to the loss and the burden of proving the failure of a party to exercise ordinary care is on the person asserting the failure. In this case, as the trial court found, the appellant did not successfully prove that Dr. Ott failed to exercise ordinary care, and found that, as between PNB and Dr. Ott, PNB was the more substantial cause of the' loss.
The appellee claims that equitable estop-pel is only applied as a theory of last resort, and in order for it to apply, PNB must first prove that Ott had an obligation and then that he made some representation or conduct by action or word to PNB. Ott denies any duty to supervise Galla-van’s actions, or obligation to prevent the forgeries based on some “propensity” knowledge. Additionally, Ott claims that PNB must show reliance on the actions of Dr. Ott in making the advances to Galla-van. Because the signatures of Ott on the draw requests were forged, Ott claims there was no action on his part which PNB could not change its position or rely on any of Ott’s actions during the time the draws were being made.
Ott asserts that he had no power or authority to supervise Gallavan and no duty to do so. Specifically, Ott argues that he had no higher duty based on his knowledge of Gallavan’s alleged propensities. Further, there is no propensity established that Ott knew of. He claims that *300 Gallavan had previously signed two of his checks, which he told her not to do again, and she did not do again. Additionally, even within the duty analysis argued by PNB, Ott asserts that his actions taken to prevent fraudulent activity on the Note were not unreasonable and therefore Ott cannot be liable under PNB’s duty theories.
The Appellant argues that it is well settled in Louisiana law the where one of two parties must suffer loss through fault of another, the burden of loss should be placed on the party that most contributed to that loss. The appellant claims that _[gbecause Dr. Ott did not inform PNB immediately after becoming aware of his wife’s fraudulent conduct he was no longer an innocent party and his is liable for all that follows. There is a strong argument, however, that PNB was more responsible for the loss in this circumstance. The trial court stated that PNB’s banking practices were the controlling factor in this case. It is certainly arguable that had PNB adequately confirmed the signatures on the draw request, they would have discovered the fraudulent signature.

Dr. Otts’ Reconventional Demand

The trial court found that there was no negligence on the part of PNB in not notifying the credit reporting agencies that the debt on the Note and Dr. Ott’s liability were in dispute. The trial court further held that Dr. Ott did not himself report the dispute on his own behalf and made no attempt to protect his credit or mitigate his damages. I believe the findings of the trial court on this issue were correct and the Appellee’s reconventional demand should have been dismissed.

CONCLUSION

For the reasons stated above the trial court’s judgment is affirmed. Additionally, the Court affirms the judgment of the trial court dismissing the Reconventional Demand by Dr. Ott against PNB.

AFFIRMED.